**KARIN J. IMMERGUT**
United States Attorney
Oregon State Bar No. 96314
**SCOTT ERIK ASPHAUG**
Assistant United States Attorney
Oregon State Bar No. 83367
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1008
Facsimile: (503) 727-1117
scott.asphaug@usdoj.gov
      Of Attorneys for Federal Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **WESTERN RADIO SERVICES COMPANY INC.,** an Oregon Corporation; and **RICHARD L. OBERDORFER,**<br><br>        Plaintiffs,<br><br>  v.<br><br>**UNITED STATES FOREST SERVICE; LARRY TIMCHAK; JIM McMILLIN; BOB ROCK; KRISTEN BAIL; JIM SAUSER;** and **DIANA HSIEH,**<br><br>        Defendants. | Case No.  CV 04-1346 AA<br><br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

/ / / / /

/ / / / /

/ / / / /

**Page 1-**      **Defendants' Memorandum in Support of Motion for Summary Judgment**
                *Western Radio v. United States Forest Service*; CV 04-1346 AA

## I.    INTRODUCTION

On September 22, 2004, this action was filed by the plaintiffs, Western Radio Services Company and Richard L. Oberdorfer.[1]  This action purports to be a claim against the United States under the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et seq*., and a claim against six named present or former employees of the United States Department of Agriculture, Forest Service (Forest Service) under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971).  On January 28, 2005, the defendant United States and the six named defendant federal employees filed their answers.  (CR 18-24).  Simultaneously, on January 28, 2005, defendant United States and the six named defendant federal employees filed their Motion to Dismiss and Memorandum in support.  (CR 25, 26).  On May 16, 2005, Judge Aiken denied the defendants' Motion to Dismiss, but because of defects in the theory of the plaintiffs' complaint, the Court gave the plaintiffs 20 days to file an amended complaint.  (CR 38).

On June 6, 2005, the plaintiffs filed a First Amended Complaint.  (CR 39).  The plaintiffs named the same six defendant federal employees and again alleged claims under the APA and *Bivens*.  On June 22, 2005, the defendants filed their answer to the First Amended Complaint. (CR 40-46).

In brief, the First Amended Complaint alleges that the defendant Forest Service violated the plaintiffs' rights under the APA and that the named defendant federal employees violated the plaintiffs' rights under *Bivens*.  The Complaint is centered on an application the plaintiffs

---

[1]Plaintiff Western Radio is solely owned by Plaintiff Richard L. Oberdorfer.

**Page 2-     Defendants' Memorandum in Support of Motion for Summary Judgment**
*Western Radio v. United States Forest Service*; CV 04-1346 AA

submitted to the Forest Service for a "side-hill antennae" on an electronic communication site

known as Gray Butte.  Plaintiffs allege in their First Amended Complaint that the defendant

Forest Service failed to make a timely decision on the plaintiff's application for a side-hill

antenna and that the six defendant federal employees had done so in retaliation for the plaintiffs

previous litigation against the Forest Service.  (CR 39, pp. 2-5).

II.    **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if no genuine issue exists regarding any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

moving party must show the absence of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895,

898 (9th Cir. 2002).  In response to a properly supported summary judgment motion, the non-

moving party must go beyond the pleading and show there is a genuine issue of material fact for

trial.  *Id.*  The court must draw all reasonable inference in favor of the non-moving party.

*Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  A mere disagreement

about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank*

*of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).

The substantive law governing a claim or a defense determines whether a fact is material.

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual

dispute would not affect the outcome of a claim, the court may grant summary judgment.  *Arpin*

*v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

III.    BACKGROUND

Gray Butte is an 80-acre existing electronic site designated in the Crooked River National Grassland Land and Resource Management Plan (LRMP).  It is located within section 30, T.13S., R.14E., Willamette Meridian, approximately 15 air miles northwest of Prineville, Oregon, and is 5,118 ft. in elevation.  The electronic facilities are clustered in a small area near and at the top of the Butte. (CSF ¶ 1).  (Declaration of Cuddy).

Currently, there are three facility owners (lessees) at the Site, Western Radio, Slater Communications and Electronics and Day Wireless Systems, each with their own building and tower (Western Radio has two towers and two buildings).  All three had communication site leases from the Forest Service.  The lease terms include the Gray Butte Electronic Site Management Plan (Site Plan).  While these leases expired December 31, 2006, the lessees have requested, and the Forest Service plans to offer, new leases to the facility owners.  (CSF ¶ 2). (Declaration of Cuddy).

The three lessees provide a variety of communication services and facilities. There are broadcast translators, which rebroadcast or amplify signals to provide local radio and TV station coverage. The lessees also provide facilities needed by businesses that provide wireless internet and cellular telephone services. Lastly, they provide facilities for businesses and government agencies, such as logging companies and law enforcement entities, to facilitate internal communications.  (CSF ¶ 3).  (Declaration of Cuddy).

The leases allow, but do not require, the Forest Service to inspect the lessees' facilities. The leases do not provide for the inspection of one lessees' facility by another lessee. (CSF ¶ 4). (Declaration of Cuddy).

In a letter dated January 3, 1991, Western Radio requested that it be allowed to install two antennas at the Site "to the sidehill". In a letter dated September 10, 1991, Western Radio revised its initial application. Western Radio again revised its sidehill antenna application in a letter dated October 19, 1998. The Forest Service denied Western Radio's revised sidehill antenna application in a letter dated December 3, 1998. Western Radio appealed the December 3, 1998, denial in a December 7, 1998, letter. The Forest Service withdrew the December 3, 1998, decision in a January 4, 1999, letter. Western Radio further amended its sidehill antenna application in an undated letter received by the Forest Service on January 24, 2006, in which Western Radio proposed a total of four sidehill antenna. (Exhibit A, Oberdorfer Deposition, p. 78, lines 12-15). This amendment was the fourth version of Western Radio's sidhill antennae application and superceded the three earlier versions. (Exhibit A, Oberdorfer Deposition, p. 81, lines 8-16). Western Radio further clarified the content of its revised sidehill antenna application in a March 17, 2006, letter. (CSF ¶ 5). (Declaration of Cuddy).

Following receipt of Western Radio's March 17, 2006, clarification, the Forest Service prepared an Environmental Assessment of Western Radio's sidehill antenna application. On September 4, 2007, the Forest Service issued a Decision Notice and Finding of No Significant Impact (Decision Notice) with respect to Western Radio's Gray Butte Sidehill Antenna. A copy of the signed Decision Notice is attached to the declaration of Paul Cuddy. The Decision Notice

allows Western Radio to install two of the four requested sidehill antenna towers.   (CSF ¶ 6). (Declaration of Cuddy).

According to plaintiffs, the individual defendants violated his constitutional rights in their individual capacities only by not enforcing the site plan, not enforcing the site users agreement and not processing Western Radio's special use applications.  (CSF ¶ 7).  (Exhibit A, Oberdorfer Deposition, pp. 68-70).

Plaintiffs do not identify any equipment or other activities the other lessees either have or are conducting that are not in compliance with the site users agreement.  (CSF ¶ 8).  (Exhibit A, Oberdorfer Deposition, pp. 90-91).

Each individual defendant denies that they were a member of any conspiracy alleged in the complaint, denies they were a member of any conspiracy concerning plaintiffs and disclaims any knowledge that any such conspiracy exists or existed. Each individual defendant denies that they deprived plaintiffs of their constitutional rights.  (CSF ¶ 9).  (Declarations of Timchak, McMillin, Rock, Bail, Sauser and Hsieh).

IV.    **DISCUSSION**

1.    **This court should not imply a *Bivens* remedy.**

Unlike constitutional claims brought under 42 U.S.C. § 1983, there is no statutory authority for imposing liability on individual federal actors for constitutional violations.  Instead, liability for constitutional claims against federal actors is a judicially created doctrine subject to express limitations regarding its reach.  In the *Bivens* decision, the Supreme Court cautioned against extension of liability where "special factors counsel hesitation in the absence of

**Page 6-        Defendants' Memorandum in Support of Motion for Summary Judgment**
            *Western Radio v. United States Forest Service*; CV 04-1346 AA

affirmative action by Congress." *Bivens*, 403 U.S. at 396.  One such "special factor" counseling against the extension of civil liability is the existence of a comprehensive statutory scheme providing alternative remedies.  Examples of cases in which the courts have declined to imply a *Bivens* remedy in light of comprehensive statutory schemes that occupy the field include:

(1)  claims by federal employees that their constitutional rights were violated by adverse employment actions, *Bush v. Lucas*, 462 U.S. 385-90 (1983) (holding that the existence of remedies under the Civil Service Reform Act (CSRA) precluded implication of an alternative *Bivens* remedy);

(2) constitutional claims to damages arising from delays in receiving social security benefits, *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988);

(3)  constitutional challenges to IRS assessments, *Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004);

(4)  constitutional challenges to U.S. Customs tariffs, *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003);

(5)  constitutional loss claims stemming from a cancelled logging contract in light of remedies available under the Contract Disputes Act, *Janicki Logging Co. v. Mateer*, 42 F.3d 561 (9th Cir. 1994); and

(6)  On June 25, 2007, the United States Supreme Court issued a decision in *Wilkie v. Robbins*,127 S. Ct. 2588 (2007) refusing to extend *Bivens* liability into a new context based solely upon claims of unlawful, retaliatory motivation when the plaintiff has other, adequate remedies under the Federal Tort Claims Act and the Administrative Procedure Act.  In *Wilkie*,

**Page 7-**      **Defendants' Memorandum in Support of Motion for Summary Judgment**
            *Western Radio v. United States Forest Service*; CV 04-1346 AA

the Supreme Court refused to recognize *Bivens* liability in a landowner's dispute with employees of the BLM based upon a claimed unlawful motive, reasoning that: "a *Bivens* action to redress retaliation against those who resist Government impositions on their property rights would invite claims in every sphere of legitimate governmental action affecting property interests . . . . The point is the reasonable fear that a general *Bivens* cure would be worse than the disease." *Id.* at 2604.

Plaintiffs allege two theories for *Bivens* liability in the First Claim for Relief. (See Amended Complaint, ¶ 14). The first is that the individual defendants conspired to intentionally delay action on the sidehill antennae application to punish plaintiff and to chill plaintiff's desire to contest Forest Service actions or inactions.  However, plaintiff had a remedy under the Administrative Procedures Act to adjudicate that claim.

5 U.S.C. 706 (1)  provides a remedy of judicial review to "compel agency action unlawfully withheld or unreasonably delayed." This judicial authority to require agency action applies "where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take. *Norton v. Southern Utah Wilderness Alliance*, 124 S. Ct.2373, 2379 (2004).  In such a circumstance, the reviewing court can compel the agency to act, but has no power to specify what the action must be. *Norton*, 124 S. Ct. at 2380.

Western Radio's sidehill antennae application meets the two *Norton* requirements:

1.    The action sought from the agency was **discrete**- approval of Western Radio's
       installation of sidehill antennas at a specific location; and

**Page 8-        Defendants' Memorandum in Support of Motion for Summary Judgment**
              *Western Radio v. United States Forest Service*; CV 04-1346 AA

2.      The Forest Service was required to take action (make a decision) on the

application. After it accepts a special use application for processing, the Forset

Service "**shall decide** whether to approve the proposed use, approve the proposed

use with modifications, or deny the proposed use."  36 C.F.R. 251.54(g)(4)

(Emphasis added).

The availability of a remedy under the APA for the alleged failure of the individual

defendants to take action on the sidehill antennae application is precisely the type of special

factor counseling hesitation that the Supreme Court contemplated when it held that *Bivens*

liability should not extend into those areas of comprehensive statutory schemes.  The basis for

this doctrine of judicial hesitation is rooted in separation of powers principles: "the fact that the

courts could create a more complete remedy for the asserted wrong does not mean that they

should, for Congress is in a better position to decide whether or not the public interest would be

served by creating it." *Janicki*, 42 F.3d at 564.  The Ninth Circuit has applied the Supreme

Court's holding in *Schweiker* "broadly," holding that "where Congress has provided *some*

mechanism for relief, *Bivens* claims are precluded." *Adams*, 355 F.3d at 1184, *citing Berry v.*

*Hollander*, 925 F.2d 311, 313 (9th Cir. 1991) (emphasis in original).  This principle holds true,

even when the statutory remedies available do not include monetary damages. *See e.g. Libas*,

329 F.3d at 1130 (holding that statutory protest rights precluded alternative damage claims under

*Bivens*).  "So long as the plaintiff had an avenue for redress, bedrock principles of separation of

powers foreclosed judicial imposition of a new substantive liability.  Implied remedies premised

**Page 9-**          **Defendants' Memorandum in Support of Motion for Summary Judgment**
                    *Western Radio v. United States Forest Service*; CV 04-1346 AA

on violations of constitutional rights are not created to fill in gaps of existing relief to which

plaintiffs are already entitled." *Id.* at 1130.

      In this case, the APA  provides an express and comprehensive remedial scheme to redress

any legal claim that the agency has failed to act as required.  The Act expressly contemplates that

the failure to take action will be subject to judicial review.  5 U.S.C. § 706 (1).  The fact that

plaintiffs cannot obtain emotional distress damages under the APA like they can under *Bivens* is

irrelevant to the analysis of whether the APA occupies the field so as to counsel hesitation

against implying a *Bivens* remedy.  *See Libas*, 329 F.3d at 1130.

      This court should decline to accept plaintiffs' invitation to imply a *Bivens* remedy into

the circumstances giving rise to this action given the comprehensive remedial scheme already

available under the APA.

      **2.**     **<u>Common law torts are not constitutional torts.</u>**

      Plaintiffs second *Bivens* theory in the First Claim for Relief is that defendants provided

advantages to Western Radio's competitors in order to further chill plaintiffs First Amendment

Rights. In short, plaintiffs attempt to raise the common law torts of intentional interference with

business or contrat relations into a constitutional claim. Common law torts cannot be converted

into constitutional claims. *Daniels v. Williams*, 474 U.S. 327, 332 (1986).  The Constitution does

not supplant traditional tort law. *Id.  See also Siegert v. Giley*, 500 U.S. 226, 234-235 (1991)

(noting that damage from injury to reputation "may be recoverable under state tort law but is not

recoverable in a *Bivens* action."). This position is further supported by  *McCarthy v. Mayo*, 827

F.2d 1310, 1315 (9th Cir. 1987), in which the Court rejected a 42 U.S.C. §1983 claim that a

**Page 10-**       **Defendants' Memorandum in Support of Motion for Summary Judgment**
                   *Western Radio v. United States Forest Service*; CV 04-1346 AA

criminal prosecutor interfered with plaintiff's First Amendment rights by curtailing his ability to conduct business because such a claim "implicates only state tort law and not the Constitution."

The individual Forest Service employee defendants are not individually liable for common law torts under the Westfall Act, 28 U.S.C. § 2671, et seq. *Pauly v. USDA*, 348 F.3d 1143, 1150-51 (9th Cir. 2003). The United States is the sole defendant in a common law tort action. *See Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 743-44 (9th Cir. 1991) (noting that once an employee is certified within course and scope, the FTCA "mandates" substitution).

Thus, to the extent plaintiffs seek to premise their constitutional claims upon alleged damage to their business, they have failed to state viable claims against the named defendants in their individual capacities.

### 3. Plaintiffs "Class of One" Bivens Claim Fails for Lack of Factual Support

Plaintiffs fourth claim for relief alleges *Bivens* liability based in equal protection under a "class of one" theory. The class of one theory was recognized by the United States Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam). To prevail, plaintiff must show that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564. Where an equal protection claim is based on "selective enforcement of valid laws," a plaintiff can show that the defendant's rational basis for selectively enforcing the law is a pretext for "an impermissible motive." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187-88 (9th Cir. 1995).

**Page 11-    Defendants' Memorandum in Support of Motion for Summary Judgment**
*Western Radio v. United States Forest Service*; CV 04-1346 AA

Disparate government treatment will survive rational basis scrutiny "as long as it bears a rational relation to a legitimate state interest." *Patel v. Penman*, 103 F.3d 868, 875 (9th Cir. 1996). Although "selective enforcement of valid laws, without more, does not make the defendant's action irrational", *Freeman*, 68 F.3d at 1188, there is no rational basis for state action "that is malicious, irrational, or plainly arbitrary." *Armendariz v. Penman*, 75 F.3d 311, 326 (9th Cir. 1996) (en banc).

First, in any equal protection analysis, it is necessary to identify the class or group being discriminated against. *Squaw Valley Development Company v. Goldberg*, 375 F.3d 936, 945 (9th Cir. 2004). Here, plaintiff contends it is being singled out from other lessees on Gray Butte. However, plaintiffs present no evidence to support its claim that the other lessees are similarly situated to plaintiff. Nor have plaintiffs provided any evidence regarding how they were treated differently than the other lessees. During plaintiff's deposition, he failed to raise any specific, identifiable instances in which he was treated differently than the other Gray Butte lessees.

In paragraph 43 of plaintiff's first amended complaint, plaintiff refers to an email dated July 16, 2003 as offering "additional facts in support of his complaints about Day Wirelesses and Slaters non-compliance with the site plan." A copy of the July 16, 2003 email is attached as Exhibit B. Of note is plaintiff's concern about Slater's fourth tower, described by plaintiff in the email as "the fourth and unauthorized tower." The email (and the amended complaint) fails to note that plaintiffs twice judicially challenged the installation of Slater's fourth tower and lost both times. *See Western Radio Services Co., Inc. v. Esty*, 79 F.3d 896 (9th Cir. 1996) (the Forest Service did not abuse its discretion when it issued a permit to Slater to construct a tower on Gray

Butte) and *Western Radio Services Co., Inc. v. Glickman*, 123 F.3d 1189 (9th Cir. 1997)(Western

Radio and Mr. Oberdorfer's claims seeking to enjoin the construction of the Slater tower on Gray

Butte barred on the grounds of res judicata).  In short, plaintiffs now seek, via this equal

protection class of one claim, a third bite of the apple with respect to the Slater tower

construction.  As in *Western Radio v. Glickman, supra*, these claims are barred on the grounds of

issue preclusion.  Collateral estoppel prevents a party from relitigating the same issue, even if the

defendants or the particular facts may be different.  *See United States v. Mendoza*, 464 U.S. 154,

159 n.4 (1984).

In paragraph 53 of the amended complaint, plaintiffs state "on October 5, 2003,

Oberdorfer emailed Bail and gave more details regarding Slater's non-compliance."  A copy of

the October 5, 2003 email is attached as Exhibit C.  That email contains no details of non-

compliance or even a specific area of non-compliance.  Rather, the email complains of Slater's

refusal to allow Western Radio to inspect Slater's facilities at Gray Butte.  There is no

requirement that the Forest Service inspect the lessees facility nor do the individual leases

provide for the inspection of one lessees facility by another lessee.

Despite the fact that Western Radio has had ample opportunity to advise the Forest

Service of specific instances of site plan violation that Western Radio believes the Forest Service

should address, it has failed to do so in correspondence or in its amended complaint with the one

exception of the fourth Slater tower.  As stated above, Western Radio twice challenged the

installation of the Slater tower and was twice rebuffed by the judicial system.

**Page 13-**         **Defendants' Memorandum in Support of Motion for Summary Judgment**
              *Western Radio v. United States Forest Service*; CV 04-1346 AA

Should plaintiffs proffer additional specific instances in which it contends plaintiffs were treated differently than others similarly situated, defendants reserve the opportunity to proffer evidence of a rational basis for their actions taken in response to plaintiff's allegations.

Should plaintiffs argue that the defendants asserted rational basis for action was merely a pretext for differential treatment, plaintiffs must show pretext by creating a triable issue of fact that either: (1) the proffered rational basis was objectively false; or (2) the defendant actually acted based on an improper motive. *See Patel*, 103 F.3d at 876. During plaintiff Oberdorfer's deposition, his only claims of constitutional violations for each individual defendant was that they "didn't enforce the Site plan, the Site user's agreement, or process Western Radio's application." (Exhibit A, Oberdorfer Deposition, pp. 68-70). At no time has plaintiff come forward with any evidence that any individual defendant acted based on an improper motive or that the basis for any decision was objectively false.

Based on all of the arguments contained above, plaintiffs' class of one *Bivens* claim fails.

### 4. The Individual Defendants are entitled to qualified immunity as a matter of law.

Under the doctrine of qualified immunity, "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine is a judicial creation rooted in public policy. Litigation diverts official energy and resources from pressing public problems, and the threat of personal liability discourages capable people from assuming public

**Page 14-**     **Defendants' Memorandum in Support of Motion for Summary Judgment**
        *Western Radio v. United States Forest Service*; CV 04-1346 AA

positions; the fear of suit, moreover, may have a chilling effect on official decision-making, seriously deterring officials from exercising judgment with the decisiveness critical to their office. *See Harlow*, 457 U.S. at 814; *Scheuer v. Rhodes*, 416 U.S. 232, 240 (1974). As the Supreme Court observed in *Siegert*: "One of the purposes [of qualified immunity] is to spare a defendant not only unwanted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." 500 U.S. at 232. Federal officials should not be harassed by frivolous lawsuits. *Butz v. Economou*, 438 U.S. 478, 508 (1978).

Official immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine provides ample room for mistaken judgment, and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). The doctrine of qualified immunity employs an objective standard of reasonableness so that claims of improper motive are irrelevant to the defense. *Crawford-El*, 523 U.S. at 589-90; *see also Tatum v. City & County of SanFrancisco*, 2006 WL 846263, *2-3 (9th Cir. 2006) (noting that where objective facts justify defendant's action, subjective motivation is "irrelevant" to a constitutional claim of false arrest); *McCarthy*, 827 F.2d at 1315. Further, a defendant cannot be held individually liable for the actions of others and his personal involvement is essential to plaintiffs' claims. *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001)

Immunity questions should be resolved "at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The Ninth Circuit has held that qualified immunity under *Saucier* involves a three-part inquiry:

**Page 15-**        **Defendants' Memorandum in Support of Motion for Summary Judgment**
           *Western Radio v. United States Forest Service*; CV 04-1346 AA

"First, we must determine whether the facts alleged show [defendant's] conduct violated a constitutional right.  Second, we must determine whether the right was  clearly established at the time of the alleged violation.  Finally, we must determine whether it would be clear to a reasonable [person] that [his] conduct was unlawful in the situation [he] confronted."

*Frederick v. Morse*, 439 F.3d 1114, 1123 (9th Cir. 2006).  Whether a right is clearly established is a "pure question of law."  *Id.*  While plaintiffs need not identify a case precisely on point, the "right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."  *Wilson v. Layne*, 526 U.S. 603, 615 (1999).  The "contours" of the right must be sufficiently clear to put a reasonable official on notice that his actions violate the constitution.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

Plaintiffs have argued that their First Amendment rights were violated by the Forest Service's failure to act on a sidehill antennae application that was amended numerous times, most recently in March of 2006 and that the named defendants should be individually liable for damages as a result of the Forest Service's inaction.  Plaintiffs have not cited, nor are defendants aware of any authority to support the proposition that when an individual employee fails to take action on a changing application in a time frame defined solely by plaintiff as reasonable, their inaction gives rise to constitutional concerns.

There is no clearly established law to put the individual defendants on notice that in processing a decision on the sidehill antennae application , they might be *personally* and individually liable to plaintiffs for damages for failure to reach a decision in a time frame subjectively acceptable to plaintiffs .  To impose such an obligation upon the individual

**Page 16-**          **Defendants' Memorandum in Support of Motion for Summary Judgment**
               *Western Radio v. United States Forest Service*; CV 04-1346 AA

employees would have a significant chilling effect on an agency's willingness to enter into

contracts with private entities at all.  Especially in a situation such as existed on Gray Butte,

where plaintiff remained in business and on-site, there is nothing that would lead any reasonable

federal official with contracting authority to conclude that their actions in processing the

application were not constitutionally permissible, even with the potential that plaintiffs, given

their litigation history against the Forest Service, might allege that the delay frustrates their First

Amendment rights.

Regarding plaintiff's class of one equal protection claim, as argued above, plaintiff has

failed to offer proof that plaintiffs were treated differently by defendants than the other lessees or

that any individual defendant's conduct violated a constitutional right.  As such, plaintiff's class

of one claim fails under the first prong of the *Saucier v. Katz, supra*, test.

For all of the above  reasons, should the court even reach this issue, the individual

employees are entitled to qualified immunity from plaintiffs' damage claims as a matter of law.

All claims for *Bivens* liability should be dismissed.

**5.      Plaintiff's Second and Third Claims for Relief Under the Administrative**
**Procedures Act are Moot.**

Plaintiffs second claim for relief alleges that defendants unlawfully withheld and

unreasonably delayed action on plaintiffs sidehill antennae application and requests declaratory

and injunctive relief.  Plaintiffs third claim alleges arbitrary and capricious action based on the

same facts. Those claims are moot.

**Page 17-      Defendants' Memorandum in Support of Motion for Summary Judgment**
            *Western Radio v. United States Forest Service*; CV 04-1346 AA

On September 4, 2007, the Forest Service issued a "Decision Notice and Finding of No Significant Impact" (Decision Notice) with respect to Western Radio's "Gray Butte Sidehill Antennae Application". A copy of the Decision Notice is attached to the Declaration of Paul Cuddy filed in support of this motion. The Decision Notice allows Western Radio to construct two sidehill microwave towers and antennas as requested, but does not allow Western Radio to construct two additional sidehill towers for VHS antennas. Western Radio abandoned the 1991 application upon which it brought the claims in this lawsuit, The Forest Service has issued a decision with respect to Western Radio's final 2006 superceding application. The decision grants in part and denies in part the application.

As previously argued, and even assuming, *in arguendo*, that the Forest Service was required to act on one or more of Western Radio's first three applications, " a court can compel the agency to act, but has no power to specify what the action must be." *Norton v. southern Utah Wilderness Alliance*, 124 S. Ct. 2373, 2380 (2004). In light of plaintiffs and the Forest Service's subsequent acts after this action was filed in 2004, no action remains to be taken with respect to the sidehill antennae applications. Western Radio no longer seeks approval of any of the three applications predating the litigation. The Forest Service has acted with respect to the 2006, post-litigation application.

Western Radio is free to file an administrative appeal with respect to the Forest Service's recent decision consistent with the Forest Service's special use appeal regulations found at 36 C.F.R. part 251, Subpart C. 36 C.F.R. 251.53(l)(5) and 251.82(a)(8). Western Radio must exhaust its administrative remedies before judicially challenging the Forest Service decision. 36

**Page 18-      Defendants' Memorandum in Support of Motion for Summary Judgment**
        *Western Radio v. United States Forest Service*; CV 04-1346 AA

C.F.R. 251.101; *Clouser v. Espy*, 42 F. 3d 1522, 1532 (9th Cir. 1994), *cert denied* 515 U.S. 1141(1995).

**V.    CONCLUSION**

For all of the above reasons, plaintiffs' claims fail.  It is respectfully urged that summary judgment is appropriate and that this matter should be dismissed.

Dated this 18th day of September, 2007.

Respectfully submitted,

KARIN J. IMMERGUT
United States Attorney
District of Oregon


*/s/ Scott Erik Asphaug*
SCOTT ERIK ASPHAUG
Assistant United States Attorney
Oregon State Bar No. 83367
1000 S.W. Third Ave., Suite 600
Portland, OR  97204-2902
        Attorney for Federal Defendants

**Page 19-    Defendants' Memorandum in Support of Motion for Summary Judgment**
         *Western Radio v. United States Forest Service*; CV 04-1346 AA

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing **DEFENDANTS' MEMORANDUM**

**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served upon all parties

electronically via ECF on September 18, 2007, addressed to:

> Marianne G. Dugan
> Attorney at Law
> 259 E. 5th Avenue, Suite 200-D
> Eugene, OR 97401
> Email: mdugan@mdugan.com
> *Attorney for Plaintiffs*

> /s/ Melissa Stewart
> MELISSA STEWART
> LEGAL ASSISTANT

**CERTIFICATE OF SERVICE**