IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


WESTERN RADIO SERVICES CO.,                    Civ. No. 04-1346-AA
an Oregon corporation; and
RICHARD L. OBERDORFER,                              OPINION AND ORDER

          Plaintiffs,

     v.

UNITED STATES FOREST SERVICE;
LARRY TIMCHAK; JIM McMILLIN;
BOB ROCK; KRISTEN BAIL; JIM
SAUSER; and DIANA HSIEH,

          Defendants.
────────────────────────────────

Marianne Dugan
259 E. 5th Avenue, Suite 200-D
Eugene, OR 97401
     Attorney for plaintiffs

Karin J. Immergut
United States Attorney, District of Oregon
Scott Erik Asphaug
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
     Attorneys for defendant


1   - OPINION AND ORDER

AIKEN, Judge:

Plaintiffs Western Radio Services (Western Radio) and Richard Oberdorfer filed suit alleging claims against the United States Forest Service (Forest Service) under the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.,* and claims against six former and present Forest Service employees under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) (Bivens). Plaintiffs allege that the Forest Service unlawfully withheld action on a special use application for sidehill antennas, and that the individual defendants conspired to delay action on the application in retaliation for plaintiffs' previous lawsuits against the Forest Service.

Defendants move for summary judgment, arguing that Bivens liability is not warranted in these circumstances and that plaintiffs' APA claims are moot. On December 4, 2007, the court heard oral argument on defendants' motion. The motion is granted.

BACKGROUND

Western Radio is an Oregon corporation solely-owned by Oberdorfer. Since 1978, Western Radio has obtained leases to operate communication facilities on land managed by the Forest Service. Western Radio currently provides various electronic communication services and has filed special use applications with the Forest Service to expand its capacity. On behalf of Western Radio, Oberdorfer prepares the applications and communicates with

2    - OPINION AND ORDER

Forest Service personnel on administrative matters.

Gray Butte is an 80-acre site located in the Ochoco National Forest approximately fifteen miles north of Prineville and designated within the Crooked River National Grassland Land and Resource Management Plan (LRMP).  Western Radio, Day Wireless Systems (Day Wireless), and Slater Communications and Electronics (Slater Communications) own communication facilities and lease space on Gray Butte.  The three lessees provide a variety of services, including broadcast translation, wireless internet and cellular phone services, and internal communication facilities for businesses and government agencies.[1]  Under the lease agreements, the Forest Service may, but is not required, to inspect the lessees' facilities.  The leases do not authorize one lessee to inspect the facilities of another.

By letters dated January 3, 1991 and September 10, 1991, Western Radio requested permission to install two antennas at Gray Butte "to the side-hill."  According to plaintiffs, the Forest Service did not process the application.  Western Radio submitted a revised request on October 19, 1998 and again sought approval for two sidehill antennas.[2]  On December 3, 1998, the Forest Service

---

[1]The leases for communication services on Gray Butte expired on December 31, 2006.  The lessees have requested new leases and are currently operating with temporary leases.

[2]Plaintiffs dispute defendants' characterization of the 1998 application as a "revised" application and assert that Western Radio's 1991 application remained pending after denial of the

denied Western Radio's side-hill antenna application.

On December 7, 1998, plaintiffs appealed the denial of Western Radio's application, and on January 4, 1999, the Forest Service withdrew its December 3, 1998 decision.

On September 22, 2004, plaintiffs filed suit against defendants.

On January 24, 2006, Western Radio submitted another application and requested four sidehill antennas. By letter dated March 17, 2006, plaintiffs further clarified the content of their sidehill antenna application. The Forest Service subsequently prepared an Environmental Assessment of the antennas proposed in Western Radio's 2006 application.

On September 4, 2007, the Forest Service issued a Decision Notice and Finding of No Significant Impact (Decision Notice) with respect to Western Radio's request. The Decision Notice allows Western to construct two of the requested sidehill antennas.

On September 17, 2007, defendants moved for summary judgment.

<u>STANDARD</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

----

1998 application. Regardless, this factual dispute is not material and does not defeat summary judgment.

4    - OPINION AND ORDER

to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

DISCUSSION

A.  *Bivens* Claim

Plaintiffs assert a Bivens claim against the individual defendants, based on the theory that they conspired to intentionally delay action on Western Radio's sidehill antenna

5    - OPINION AND ORDER

application in retaliation for plaintiffs' prior litigation against the Forest Service.  Plaintiffs contend that the delay in granting Western Radio's sidehill antenna application was part of a pattern of retaliation and discrimination against plaintiffs, further evidenced by defendants' favorable treatment of Day Wireless and Slater Communications.  Plaintiffs contend that defendants did not require inspections of the Day Wireless or Slater Communication facilities and allowed them to be in non-compliance with the Gray Butte Site Management Plan (Site Plan).  Plaintiffs further maintain that defendants provided advantages to Western Radio's competitors in order to chill plaintiffs' First Amendment rights.

Defendants move for summary judgment on grounds that the court should not imply a <u>Bivens</u> remedy when a comprehensive statutory scheme - the APA - provides an adequate remedy for the Forest Service's alleged failure to act.  Defendants also argue that plaintiffs' claims of favorable treatment to Western Radio's competitors implicate a common law tort action and lack factual support.[3]

In <u>Bivens</u> the Supreme Court held that the victim of a Fourth Amendment violation could assert a claim for damages against individual federal officers involved in an unlawful search and seizure, regardless of the fact that no statute authorizes damage

---

[3]Defendants also argue that qualified immunity insulates them from liability.  Because I decline to impose <u>Bivens</u> liability, I do not address the issue of qualified immunity.

6    - OPINION AND ORDER

claims against individual federal actors.  <u>Bivens</u>, 403 U.S. at 396;
<u>see also</u> <u>Wilkie v. Robbins</u>, 127 S. Ct. 2588, 2597 (2007).
Accordingly, <u>Bivens</u> authorizes courts to award damages against
federal officials to compensate plaintiffs for violations of their
federal constitutional rights.

   "However, <u>Bivens</u> remedies are not available to compensate
plaintiffs for all constitutional torts committed by federal
officials." <u>Western Center For Journalism v. Cederquist</u>, 235 F.3d
1153, 1156 (9th Cir. 2000).  Rather, "any freestanding damages
remedy for a claimed constitutional violation has to represent a
judgment about the best way to implement a constitutional
guarantee; it is not an automatic entitlement no matter what other
means there may be to vindicate a protected interest, and in most
instances we have found a <u>Bivens</u> remedy unjustified." <u>Wilkie</u>, 127
S. Ct. at 2597; <u>see also</u> <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 421-
22 (1988) ("The absence of statutory relief for a constitutional
violation, for example, does not by any means necessarily imply
that courts should award money damages against the officers
responsible for the violation.").  Thus, while the Supreme Court
has extended <u>Bivens</u> liability to employment discrimination in
violation of the Due Process Clause and Eighth Amendment violations
by prison officials, the Court has declined to extend liability to
claims of First Amendment violations by federal employers, harm to
military personnel through service activity, and wrongful denials

of Social Security benefits. <u>Wilkie</u>, 127 S. Ct. at 2597-98 (citing cases).

The first step in deciding whether to fashion a <u>Bivens</u> remedy is to determine "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." <u>Id.</u> at 2598 (citing <u>Bush v. Lucas</u>, 462 U.S. 367, 378 (1983)). Thus, a <u>Bivens</u> remedy is unavailable when "'Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur' in the course of administering a federal program." <u>Cederquist</u>, 235 F.3d at 1156 (quoting <u>Schweiker</u>, 487 U.S. at 423). Under the second step of the <u>Bivens</u> analysis, courts must "[weigh] reasons for and against the creation of a new cause of action. . . ." <u>Wilkie</u>, 127 S. Ct. 2600. "[T]he federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation." <u>Bush</u> 462 U.S. at 378.

Here, defendants argue that the APA provides judicial review to "compel agency action unlawfully withheld or unreasonably delayed" where a plaintiff "asserts that an agency failed to take a discrete agency action that it is required to take." 5 U.S.C. § 706(1); <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 64

8    - OPINION AND ORDER

(2004) (emphasis omitted).  Accordingly, defendants argue that
because plaintiffs may seek to compel them to take action on
Western Radio's sidehill antenna requests, see 36 C.F.R. §
251.54(g)(4), the APA provides a comprehensive statutory scheme
that bars Bivens liability.  Plaintiff counters that the Supreme
Court has reiterated that "the Government may not retaliate for
exercising First Amendment speech rights," thus recognizing Bivens
liability for retaliation against the exercise of First Amendment
rights.  Wilkie, 127 S. Ct. at 2601.

    I find plaintiffs' Bivens claim foreclosed by the Supreme
Court's recent opinion in Wilkie.  There, federal agency officials
discovered that they had failed to record a non-exclusive easement
granted to the government by a former landowner, and that the new
owner took title to the property free of the easement.  Wilkie, 127
S. Ct. 2593.  The agency officials pressured the landowner to grant
an easement, and he refused.  Id.  In the years following the
landowner's refusal, the officials trespassed on the landowner's
property to conduct a survey, canceled a negotiated right-of-way,
alleged violations of the landowner's special use permit, brought
administrative charges against the landowner for trespass and other
land-use violations, fined the landowner for repairing a public
road, brought criminal charges of impeding and interfering with a
federal employee, terminated the landowner's special use permit,
revoked the landowner's grazing permit, videotaped the landowner's

ranch guests to "catch" the landowner trespassing, and encouraged other agency officials to impound the landowner's cattle. Id. at 2594-2596. The landowner brought a Bivens claim against the agency officials, arguing that their actions were in retaliation against his exercise of property rights, and that the whole of the officials' conduct - "death by a thousand cuts" - warranted Bivens liability. Id. at 2600.

While the Court found that various processes existed to "vindicat[e] virtually all of his complaints," it nonetheless recognized that the "patchwork" of state and federal administrative and judicial proceedings applying statutes, regulations, and common law rules did not adequately remedy the whole of the officials' six-year course of conduct. Id. at 2600-01. Further, the Court found that imposing limits on government agents when engaging in necessary and legitimate "hard-bargaining" weighed against creating a Bivens remedy. Wilkie 127 S. Ct. 2601-02.

Unlike the landowner in Wilkie, plaintiffs did not suffer a myriad of administrative and judicial actions taken against them at the hands of defendants. Rather, plaintiffs complain of delay and inaction on the part of defendants in processing Western Radio's application for sidehill antennas, complaints that the APA was specifically crafted to redress.[4]   See 5 U.S.C. § 706(1). Thus,

_____

[4]Although plaintiffs complain that defendants have taken no action on an application pending since 1991, none of the individual defendants were involved in Western Radio's requests

the APA provides an alternative and comprehensive remedy to protect plaintiffs' interest in compelling government action - a convincing reason for this court to refrain from crafting a <u>Bivens</u> remedy in this case. <u>Wilkie</u>, 127 S. Ct. at 2600; <u>Schweiker</u>, 487 U.S. at 425 (even though Social Security statutory scheme did not provide "complete relief" for hardships caused by delays in receiving benefits, "Congress, however, has not failed to provide meaningful safeguards . . . ."); <u>Bush</u>, 462 U.S. at 378; <u>Adams v. Johnson</u>, 355 F.3d 1179, 1184 (9th Cir. 2004) ("[W]here Congress has provided *some* mechanism for relief, *Bivens* claims are precluded.") (citation omitted); <u>Janicki Logging Co. V. Mateer</u>, 42 F.3d 561, 564 (9th Cir. 1994) ("Moreover, the fact that the courts could create a more complete remedy for the asserted wrong does not mean that they should, for 'Congress is in a better position to decide whether or not the public interest would be served by creating it.'") (quoting <u>Bush</u>, 462 U.S. at 390).

To the extent plaintiffs allege that defendants' failure to enforce the Site Plan interfered with Western Radio's business or contract relations, constitutional claims cannot supplant traditional tort law. See <u>Siegert v. Giley</u>, 500 U.S. 226, 234-35 (1991); <u>Daniels v. Williams</u>, 474 U.S. 327, 332 (1986); <u>McCarthy v.</u>

---

prior to 2002. <u>See</u> Oberdorfer Decl., pp. 3-7 and Exs. F-I, M-R, T-V. Moreover, Western Radio revised and supplemented its applications on several occasions and did not actively pursue the sidehill antennas until 2003 - one year prior to filing suit. <u>See</u> <u>id.</u>

<u>Mayo</u>, 827 F.2d 1310, 1315 (9th Cir. 1987).  Accordingly, <u>Bivens</u> liability is not appropriate where adequate remedies under the APA are available to contest the Forest Service's delay or inaction, or where plaintiffs' underlying claim is akin to a common law tort action.

Moreover, plaintiffs present no evidence to suggest retaliation, malice, or conspiratorial acts on the part of individual defendants.  See Oberdorfer Decl., Exs. D (Oberdorfer Dep. pp. 87-91), F-I, M-Q, U, V; Defendants' Memorandum, Exs. B, C.  Indeed, when asked what actions were outside the scope of defendants' official duties, Oberdorfer merely restated his general dissatisfaction with their response to Western Radio's applications and their enforcement of the Gray Butte Site Management Plan - actions within defendants' discretion.  Defendants' Memorandum, Ex. A (Oberdorfer Dep., pp. 68-70).  Likewise, plaintiffs present no specific evidence to suggest that defendants failed to enforce the Site Plan or treated Western Radio differently from its competitors without rational basis.  See <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam).  Indeed, plaintiffs are unable to describe the activities of Western Radio's competitors that evince favorable treatment.  See Oberdorfer Deposition, pp. 97-91.  Plaintiffs make much of the fact that Slater Communications constructed a tower that was not in compliance with the Site Plan.  However, plaintiffs present no evidence to support this claim and

12    - OPINION AND ORDER

challenged the construction of Slater's tower in separate judicial proceedings.  See Western Radio Services Co, Inc. v. Esty, 79 F.3d 896 (9th Cir. 1996).

Ultimately, if the Supreme Court found the "hard-bargaining" in Wilkie - with federal agents committing trespass, revoking permits, and filing numerous administrative and criminal charges - insufficient to establish Bivens liability, plaintiffs' tepid allegations of delay, inaction and favorable treatment fall far short.  Accordingly, summary judgment is granted on plaintiffs' Bivens claim.

B.  APA Claims

Plaintiffs' second and third claims for relief allege that the Forest Service violated the APA by unlawfully withholding and unreasonably delaying action on plaintiffs' sidehill antenna application, and that the Forest Service's actions with respect to the application were arbitrary, capricious and contrary to law. See 5 U.S.C. 706(1),(2)(A).  Defendants argue that plaintiffs' APA claims are now moot, because the Forest Service issued a Decision Notice  approving, in part, Western Radio's sidehill antenna application.

At oral argument, plaintiffs conceded that the Forest Service's September 2007 Decision Notice likely rendered their APA claims moot.  Even without plaintiffs' concession, I agree that summary judgment on plaintiffs' APA claims is appropriate.

13   - OPINION AND ORDER

Although the Forest Service's Decision Notice was not completely favorable to Western Radio, no action remains to be taken with respect to the sidehill antenna application. <u>See</u> <u>S. Utah</u> <u>Wilderness Alliance</u>, 542 U.S. at 65 ("[A] court can compel the agency to act, but has no power to specify what the action must be."). Furthermore, any claim that the Forest Service's Decision Notice was arbitrary and capricious is not properly before this court. Before seeking federal judicial review of the Decision Notice, plaintiffs must exhaust their administrative remedies and file an administrative appeal consistent with the Forest Services's special use appeal regulations. <u>See</u> 36 C.F.R. part 251, subpt. C; <u>id.</u> §§ 251.82(a)(8), 251.101; <u>Clouser v. Espy</u>, 42 F.3d 1522, 1532-33 (9th Cir. 1994). Accordingly, there is no decision this court may render to grant plaintiff relief.

<u>CONCLUSION</u>

For the reasons explained above, defendants' motion for summary judgment (doc. 69) is GRANTED.

IT IS SO ORDERED.

Dated this  12  day of February, 2008.


_____/s/ Ann Aiken_____
                         Ann Aiken
             United States District Court Judge


14   - OPINION AND ORDER